IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALICIA KAY FERRILL, as PERSONAL
REPRESENTATIVE OF THE WRONGFUL DEATH
CLAIM OF LELAND FERRILL, deceased,

      Plaintiff,

vs.                             1:22-cv-00301-LF-JFR

COLFAX COUNTY BOARD OF COMMISSIONERS,
et al.,

      Defendants.

## ORDER APPROVING SETTLEMENT AGREEMENT
## INVOLVING MINOR CHILDREN

THIS MATTER comes before the Court on the parties' Notice of Resolution of Claims

Against All Defendants, filed on November 9, 2022. Doc. 67. The beneficiaries of the Estate of

Leland Ferrill are two minor children, T.R.F. and L.M.F. The Court, therefore, held a fairness

hearing on December 22, 2022, to determine whether the settlement is in the best interests of the

minor children and whether it should be approved. *See* Doc. 72. The Court appointed Nicole M.

Charlebois as Guardian Ad Litem ("GAL"), Doc. 60, and Ms. Charlebois filed her sealed report

on December 16, 2022, Doc. 71. At the fairness hearing, Frances Crockett Carpenter appeared

on behalf of plaintiff; David Anthony Roman appeared on behalf of defendants Colfax County

Board of Commissioners, Monty Gore, Adan Garcia, Ruben Garcia, Rochelle Jackson, George

Armijo, Diane Garcia, Jimmy Intveld, Judith Romero, Robert Earl Perry, and Regina Slade;

Michael Dickman appeared on behalf of defendant Mary Lou Kern; Paul Cash appeared on

behalf of defendants Roadrunner Health Services, LLC, Deborah Chavez, Roberta Romero,

Whitney Fernandez, Angela Fleming, and Dina Kotova; and Nicholas Autio appeared on behalf

of defendants Dimetrious Sandoval, Dustin Shubert, Blair Alcorn, Ryan Schoenthal, Jeremy Lucero, Daylin Ludwigs, Deanna Lynn Sharp, and Ryan Hoggatt.  *See* Doc. 72 (clerk's minutes). Plaintiff Alicia Ferrill; Nicole Charlebois, the GAL; Melody Grubelnik, the mother of T.R.F. and L.M.F.; Susan Tomita, who prepared the trust documents; and Alison Block-Chavez, the trustee recommended by the GAL, also were present.  *See id.*  After carefully considering the GAL report, the information provided by the GAL at the hearing, the argument of counsel, and the testimony of Ms. Grubelnik and Ms. Ferrill, the Court finds that the settlement agreement is in the best interests of the minor children, and will approve it.

### A.  Legal Standard

The Court reviews settlements involving minor children for fairness.  *See Thompson v. Maxwell Land-Grant and Railway Company,* 168 U.S. 451, 463–65 (1897).  Before approving such an agreement, the Court must ensure that the interests of the child will be adequately protected.  *See Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989) (courts have a general duty to protect the interests of minors); *see also United States v. Reilly*, 385 F.2d 225, 228 (10th Cir. 1967) (When interests of minors are at stake, the trial judge has an obligation to see that the children were properly represented by their representatives and by the Court.); *Salas v. Brigham*, No. 1:08-cv-01184-JB-RLP, 2010 WL 11601205, at *2 (D.N.M. Dec. 22, 2010) (unpublished) ("New Mexico courts and federal courts have traditionally supervised settlements benefitting minors and incapacitated adults, reviewing the proposed settlement to ascertain whether the agreement promotes the best interest of the minor or incapacitated beneficiary.").

In deciding whether to approve a settlement, the Court must determine whether the settlement satisfies the four factors set forth in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  These factors are: "(1) whether the proposed settlement was fairly and honestly

negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; . . . (4) the judgment of the parties that the settlement is fair and reasonable." *Id*. The Court also must determine whether the settlement is in the best interests of the minor child. *See Garrick*, 888 F.2d at 693.

### B. Factual Background

This case arose from the death of Leland Ferrill while in custody at the Colfax County Vigil Maldonado Detention Center ("Detention Center"). Plaintiff Alicia Kay Ferrill, as Personal Representative of the Wrongful Death Estate of Leland Ferrill, brought claims against all defendants for negligence, failure to provide medical care and treatment, negligent medical care and treatment, breach of contract, loss of consortium claims by his minor children, and violation of the New Mexico Civil Rights Act. Doc. 1. Plaintiff also brought a claim for negligent hiring, supervision, and training against defendants Colfax County, Kern, Roadrunner Health Services, and Gore, and a *Monell* claim against defendant Board of County Commissioners for the County of Colfax. *Id.* at 33–35.

On July 8, 2021, Mr. Ferrill was arrested and booked into the Detention Center on an arrest warrant. At the time of his arrest and booking, Mr. Ferrill admitted to having consumed alcohol. When he was booked, Mr. Ferrill was calm and cooperative, and he communicated appropriately with the arresting officers and Detention Center staff. Over the course of the next five days, Mr. Ferrill became increasingly erratic and paranoid. He stopped eating, hallucinated, and was combative. Mr. Ferrill's physical condition deteriorated, and he was seen on observation cameras falling, hitting his head, and injuring himself. Plaintiff alleged that Detention Center Staff, including corrections officers and medical staff at the facility, observed

Mr. Ferrill's behavior, but failed to render aid, seek appropriate medical care, or investigate the cause of his erratic behavior or deteriorating physical condition.  On July 13, 2021, Mr. Ferrill was found dead in his cell.  Efforts to revive him failed.  He was transported to Colfax County Hospital where he was pronounced dead.  Mr. Ferrill's cause of death was alcohol withdrawal. At the time of his death, Mr. Ferrill was 35 years old.  He had two heirs, his minor children T.R.F. and L.M.F.

### C. Analysis

At the fairness hearing on December 22, 2022, the GAL presented her report, and both Alicia Ferrill and Melody Grubelnik testified.  Counsel also made their presentations and answered questions from the Court.  The Court has considered the evidence and argument presented during the hearing on December 22, 2022.  The Court also has considered the GAL report and the basic terms of the proposed settlement agreement.  *See* Doc. 71.  The Court finds that the proposed settlement satisfies the four *Jones* factors, and that the settlement is in the best interests of the minor child.

1. *Whether the Proposed Settlements were Fairly and Honestly Negotiated*

The parties engaged in a ten-hour long private mediation on September 6, 2022, with retired Judge Alan Malott, an experienced state court judge and mediator.  *See* Doc. 50.  A tentative agreement was made at the settlement conference, and the parties worked to formalize the settlement agreement after it concluded.  *See* Doc. 51.  Ms. Carpenter stated that she planned to amend her initial complaint to add loss of consortium claims for Alicia Ferrill and Leroy Ferrill (Leland Ferrill's stepmother and father), but that the mediation occurred before an amended complaint was filed.  During the mediation, Ret. Judge Malott independently assessed the viability of Alicia Ferrill's and Leland Ferrill's loss of consortium claims, and determined the

percentage of overall settlement funds they should receive for each of their claims.  Ms. Carpenter counseled Leroy Ferrill and Alicia Ferrill about potential conflicts of interest, and they signed a document waiving them.  The GAL found that the way the loss of consortium claims were handled at the mediation resulted in a settlement to the estate that was fairly and honestly negotiated.  The Court agrees.

This Court need only assess the reasonableness of the settlement with regard to the minor children.  As related to the settlement for the minor children, Ms. Ferrill testified that she understood and participated in the formal mediation, and in the ongoing negotiations.  She understood and agreed to the final settlement amounts after consulting with her counsel.  She also understood that she was not required to settle her case, and that she could have proceeded with the litigation if she wanted to.  Ms. Ferrill testified that she believed the settlements were fair and reasonable, that she was not threatened or coerced into agreeing to the settlement amounts, and that she wanted the Court to approve the overall settlement.  Ms. Ferrill testified that she understands that the settlement would resolve all of T.R.F.'s and L.M.F.'s claims, both as individuals and as the beneficiaries to the estate of Leland Ferrill, against all defendants.  Ms. Ferrill and Ms. Grubelnik both testified that they understand that the settlement proceeds will be placed into a structured annuity for T.R.F.'s and L.M.F.'s sole benefit, and that T.R.F. and L.M.F. will not have access to the funds except as illustrated in Settlement Option One[1] for each minor child.  *See* Doc. 71-6 at 6, 14.[2]  Based on these facts, the Court finds that the settlement was honestly and fairly negotiated.

---

[1] There are two Option Ones for each child that are differentiated only by the total cost of each option.  The Court and parties focused on the Option Ones that cost more, which are found at pages 6 and 14 of Exhibit F to the GAL report.  Doc. 71-6 at 6, 14.

[2] There was a discrepancy in the lump sum payment to the minor children when they turn 18 between the GAL report and the payments shown in Exhibit F, Option One.  *Compare* Doc. 71 at

2. *Whether Serious Questions of Law and Fact Place the Outcome of this Litigation in Doubt*

Having heard from the parties and having reviewed the GAL's report, the Court also finds

that serious questions of law and fact place the outcome of this litigation in doubt.  At the hearing,

the GAL and the defendants agreed that if this case proceeded to trial, it was likely that one or

more defendants may have been found liable.  They also agreed, however, that several defendants

would have filed motions for dismissal based on qualified immunity, and that some defendants

likely would have been dismissed from the case.  They also agreed that the possibility of an

immediate appeal from any denial of a motion based on qualified immunity would have

significantly prolonged the litigation.  All parties agreed that litigating this case would have

resulted in diminishing returns for the plaintiff, given that all the insurance policies were defense-

within-limits policies.  *See* discussion in section 3, *infra*.  Thus, because of the serious questions

of law and fact as to liability of some defendants, and the inherent risks involved in taking any

case to trial, the Court finds that there are serious questions of law and fact that placed the

outcome of this litigation in doubt.

3. *Whether the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation*

The Court finds that the value of an immediate recovery outweighs the mere possibility

of future relief after protracted and expensive litigation.  The GAL noted that the New Mexico

Tort Claims Act and the underinsured status of some defendants limited the funds available to

settle the Estate's claims.  The loss-of-consortium claims that Leroy and Alicia Ferrill intended

to add could have further reduced the Estate's overall potential recovery.  All the applicable

---

15 *with* Doc. 71-6 at 6, 14.  Ms. Grubelnik made clear at the hearing that she preferred the lump sum payment set forth in Exhibit F, Option One.  The Court will order Ms. Grubelnik's preferred payment.

insurance policies were "defense-within-limits" policies.  In other words, as the case progressed, the amount available to pay toward a settlement would be reduced by the costs of defense.  After consulting with an insurance specialist, Ms. Carpenter decided that if a settlement was possible, it was best to settle the case early in the litigation.  The entirety of the insurance available in this case was paid to settle the claims (both the loss of consortium claims and the claims of the Estate).  While it is conceivable plaintiff might have obtained a larger judgment had this case proceeded to trial, it is not clear that the County would have had sufficient liquid assets to pay the judgment.  Ms. Carpenter advised that she had researched Colfax County's budget for the past ten years and had determined that settling for the maximum insurance funds available was the better option.  In addition, had this case been litigated further, additional qualified immunity motions likely would have been filed, which would have resulted in increased defense costs and the potential for delay if qualified immunity decisions were appealed.  Given that protracted litigation would have reduced the insurance funds available for settlement, and given the uncertainty of being able to collect on any judgment over the amount insured, the Court finds that the value of immediate recovery significantly outweighs the mere possibility of future relief after protracted and expensive litigation.

The Court also finds that the allocation of the funds is fair and reasonable.  The GAL recommended that the Court appoint Alison Block Chavez as Trustee for the minor children's trust, and that a structured annuity and pour-over trust be established for the minor children.  *See* Settlement Option One for each minor child, Doc. 71-6 at 6, 14.  The GAL's proposal protects the funds and ensures that the funds will be available when each child turns 18.  The proposal further provides for the financial support of the children in their early adulthood, eventually leading to each child having the opportunity to gain full control over his or her trust account by the time

each child turns 30.  Ms. Grubelnik testified that she understands these funds may be used only

for T.R.F's and L.M.F.'s benefit.  The settlement funds allocated to the children will be paid out

as set forth in Sealed Exhibit 1, which is fully incorporated into this Order by reference.  *See* Doc.

74-1.  The funds will be disbursed as set forth in Sealed Exhibits 2 and 3 (final structured

settlement documents), which also are fully incorporated into this Order by reference.  *See* Docs.

74-2, 74-3.

        4.  *Attorney's Fees and Costs*

The GAL also reviewed the attorney's fees that will be paid out of the settlement funds.

The fee agreement in this case provided for a 35% contingency fee, which is within the

customary range of contingency fees in the community.  In addition, Ms. Carpenter agreed to

reduce her contingency fee to 29.924%, which directly benefitted the Estate and the minor

beneficiaries and is below the customary fee charged in these types of cases.  The GAL

reviewed the work that Ms. Carpenter performed on the case, and she thought the attorney's

fees and costs were fair and reasonable.  The Court agrees.  The Court also reviewed the costs

incurred as set forth in Exhibit B to the GAL report, Doc. 71-2, and finds that they were

necessary and are reasonable.  The Court therefore finds that the attorney's fees and costs are

reasonable and should be paid from the settlement funds at set forth at page 9 of the GAL

report.  *See* Doc. 71 at 9.  The Colfax County defendants agreed to pay the GAL's fees as part

of the settlement agreement.

        5.  *Whether the Settlement is Fair and Reasonable and in the Minor Children's Best*
            *Interests*

All counsel, the GAL, Ms. Ferrill, and Ms. Grubelnik testified that they believed the

settlement is fair and reasonable and in T.R.F's and L.M.F.'s best interests, and the Court agrees.

The *Jones* factors are satisfied.

### D. Conclusion

In summary, the Court approves the allocation and distribution of the settlement proceeds and the payment of plaintiff's attorney's fees and costs as outlined in the GAL report at page 9 and in the Sealed Exhibits. *See* Doc. 71 at 9; Doc. 74. The Court orders that the payments to T.R.F. and L.M.F. be used to fund a trust and purchase a structured annuity for each minor child as set forth in Sealed Exhibits 1, 2 and 3. *See* Doc. 74. The Court appoints Alison Block Chavez as Trustee for the minor children's trusts. The Court releases Ms. Charlebois from her duties as guardian ad litem, and orders the Colfax County defendants to pay her fees. The Court orders the parties to file closing documents within 30 days of this order, absent a written motion showing good cause for an extension.

Finally, the trusts for minors T.R.F. and L.M.F. are subject to the following requirements:

1. No bond will be required for the Trust until T.R.F. and L.M.F. reach the age of 18. At the time each child reaches the age of 18 and the annuity funds begin being paid into their respective Trusts, a bond shall be purchased for each Trust to protect the corpus of the Trust during the term of the Trust.
2. The annuities cannot be sold, transferred, borrowed against, used as collateral, limited, or diminished in any way without a Court Order.
3. Any entity receiving a qualified assignment of the annuities contemplated by this Order is bound by the terms and limitations of this Order and the jurisdiction of this Court.
4. This money belongs to T.R.F. and L.M.F., and the Court may request an accounting of these funds from the Annuity Company or Court-appointed Trustee and require proof the funds are used only in accordance with this Order.
5. This money may not be used by anyone other than T.R.F. and L.M.F. for any expense not expressly allowed by the Trust, absent a Court order.
6. The Court-appointed Trustee understands and acknowledges that she is under a fiduciary duty to safeguard and protect this money for T.R.F.'s and L.M.F.'s individual benefits, and should she disburse any funds contrary to this Court's Order, she may be the subject of contempt of court proceedings.

IT IS SO ORDERED.

Laura Fashing
United States Magistrate Judge
Presiding by Consent